OPINION
Defendant-appellant, John Wells, appeals his conviction in the Jefferson County Court of Common Pleas on three counts of rape and two counts of rape by force or threat of force.
On October 10, 1997, appellant was indicted on five counts of rape of a child under the age of thirteen, in violation of R.C.2907.02(A)(1)(b). Two of the counts also contained an allegation that appellant used force or threat of force to accomplish the rape. The indictment did not name the alleged victims, but did indicate approximately when the separate counts were alleged to have occurred.
On October 17, 1997, appellant requested a bill of particulars, to which plaintiff-appellee, the State of Ohio, responded on November 14, 1997. Appellee's answer alleged that appellant had raped all three of his daughters. Specifically, appellant had raped his eldest daughter, Tasha Wells, since she had been three or four years old, the last time being in August of 1997 when appellant and his wife had separated. Appellee also alleged that appellant had raped his middle daughter, Tiffanie Wells, since she had been three or four years old, the last time being September of 1997, and that appellant had threatened to beat her if she told anyone. With regards to appellant's youngest daughter, Tara Wells, appellee claimed appellant had raped her until August of 1997 and threatened her that if she told anyone he would chop off her head and bury her in the ground.
Apparently unsatisfied with this information, appellant filed a motion for a more definite statement on November 17, 1997. On November 26, 1997, appellant filed a motion to continue the trial date, which had been set for December 16, 1997. A hearing was held on December 1, 1997 before Judge John Mascio. With respect to the request for a more definite statement, the trial court ordered appellee to provide appellant with specific dates of the alleged offenses, if and when appellee became aware of them. Appellant's motion for a continuance was overruled.
On December 2, 1997, appellant filed a motion for the appointment of an expert psychologist to testify concerning the credibility of child witnesses, and a motion to compel appellee to turn over the criminal record of Drema Wells, appellant's estranged wife. At the same time, appellant also filed a motion to sever all five counts in the indictment for separate trial, and a motion ordering Belmont County Children Services Agency to release all records pertaining to the alleged victims.
These motions were heard on December 8, 1997 and on December 10, 1997, the trial court issued a journal entry overruling appellant's motion to sever, and overruling appellant's motion to release records because of the availability of a subpoena ducestecum. In addition, the trial court sustained appellant's motion to disclose the criminal record of Drema Wells, but overruled appellant's motion to release the addresses of the alleged victims. However, the trial court ordered appellee to make the children available for appellant's counsel to question prior to trial. In addition, the trial court overruled appellant's motion for the appointment of an expert, finding that the expert was being sought for the sole purpose of stating an ultimate opinion as to whether or not the alleged victims were truthful or not.
A jury trial commenced on December 16, 1997 and the following day the jury returned verdicts of guilty on all counts. On December 24, 1997, appellant was sentenced to two life sentences and three ten-year terms of imprisonment, all to be served consecutively. In addition, the trial court classified appellant as a "sexually violent predator". Appellant filed a timely notice of appeal on January 6, 1998.
Appellant's first assignment of error states:
 "APPELLANT WAS DENIED THE RIGHT TO A FAIR TRIAL AND THE EFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF HIS RIGHTS UNDER BOTH THE UNITED STATES AND OHIO CONSTITUTIONS."
Under this assignment of error, appellant presents two arguments. Appellant's first argument is that he was denied a fair trial and effective assistance of counsel by virtue of the trial court's denial of his request for a continuance. Specifically, appellant claims that his counsel needed additional time to gather medical records concerning the alleged victims, and to further substantiate appellant's theory that Drema Wells had a history of falsely accusing appellant of sexual abuse every time he attempted to leave her. In addition, appellant claims his counsel needed additional time to investigate Drema Wells' conviction for corruption of a minor, and that without the continuance counsel was unable to effectively cross-examine Drema Wells on this issue.
The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge.State v. Mason (1998), 82 Ohio St.3d 144, 155. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion. State v. Unger (1981), 67 Ohio St.2d 65,67. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Apanovitch
(1987), 33 Ohio St.3d 19, 22.
Moreover, there are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. Unger, 67 Ohio St.2d at 67. Rather, as the United States Supreme Court has previously stated, "[t]he answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Ungar v. Sarafite (1964), 376 U.S. 575, 589.
A reviewing court must weigh potential prejudice to a defendant against a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice. State v. Powell (1990), 49 Ohio St.3d 255, 259. In evaluating a motion for a continuance, the factors to be considered by the trial court include (1) the length of the delay requested (2) whether other continuances have been requested and received (3) the inconvenience to litigants, witnesses, opposing counsel and the court (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived (5) whether the defendant contributed to the circumstance which gives rise to the request for a continuance and (6) other relevant factors, depending on the unique facts of each case. Unger, 67 Ohio St.2d at 67-68. Although the matter of continuance is traditionally within the discretion of the trial court, said discretion is not unlimited. State v. Rash (1996),111 Ohio App.3d 351, 354. "[A] myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality."Id. (citing Ungar, 376 U.S. at 589)
In appellant's motion for continuance, filed on November 26, 1997, counsel stated that she had a murder trial beginning on January 6, 1998 before the same trial judge, and that she needed more time to prepare appellant's case. Additionally, counsel stated that she needed time to obtain "crucial" information concerning appellant's defense. The motion did not specify what this information was, or how long of a continuance was being sought.
However, at the hearing on the motion, counsel requested a continuance of at least thirty days, but declined to specify the particular evidence she needed to gather, apparently to avoid "revealing confidences" of her client. Appellee opposed the motion, noting that subpoenas had been issued for December 16, 1997, and that the family's lives, had been "in limbo" since September of 1997.
At the hearing on the motion, the trial court noted that a thirty-day continuance would bring the trial date of appellant's case too near the trial date of the murder case which appellant's counsel had also been assigned to. The court stated that this would inevitably result in the need for another continuance of appellant's case while appellant's counsel defended the murder case. In denying the motion, the court stated that appellant's case should go forward as scheduled, reasoning that appellant's counsel had the assistance of co-counsel for the murder case.
Of the factors set forth in Unger, supra, that a trial court should consider in evaluating a motion for a continuance, most, if not all, support a finding that the trial court should have granted the motion. At the time of the motion, appellant had neither requested nor received any other continuances. Indeed, counsel for appellant had been assigned the case for just over five weeks. There is nothing in the record to suggest that counsel's request was made as a delaying tactic, but rather counsel stated that she needed more time to investigate and gather evidence. Although the motion itself did not specify the particular evidence being sought, it was abundantly clear from appellant's other motions that counsel was experiencing difficulty in obtaining the medical records of the alleged victims and the criminal record of Drema Wells. Indeed, the trial court subsequently ordered appellee to disclose the criminal record of Drema Wells and to make the children available to counsel for questioning.
Similarly, the record fails to demonstrate that a continuance would have brought any undue inconvenience to appellee, the witnesses, or the trial court itself. To deny appellant a continuance on the grounds that appellant's counsel would likely seek another subsequent continuance of appellant's case because of a scheduling conflict with another unrelated case is unreasonable since a defendant has no control over his appointed counsel's trial load.
Under the circumstances presented in the instant case we find that the trial court abused its discretion in denying the motion for continuance. Nevertheless, after a thorough review of the record, we also find that said decision ultimately did not affect any of appellant's substantial rights and was harmless error. See Crim.R. 52(A).
The trial court's denial of the motion for continuance did not adversely impact the effectiveness of appellant's trial counsel. After that motion was denied, appellant's trial counsel filed additional motions to compel the state to provide the criminal record of Drema Wells and to compel the state to make the children available for interviews. Trial counsel also had the Belmont County Children Services Agency served with a subpoenaduces tecum, seeking production of childrens' mental and psychological records.
Trial counsel made progress prior to trial. She was able to speak with the children. Also., the state turned over all the information it had pertaining to the criminal history of Drema Wells.
The effectiveness of appellant's trial counsel continued at trial. She effectively cross-examined the children. On cross-examination of a Jefferson County Children Services case worker, she elicited testimony that the Belmont County Children Services Agency had previously investigated appellant and found that "there was no substantiation of any sexual abuse involvement by the father." Trial counsel questioned Drema Wells effectively and at length about her criminal history and previous allegations she had made towards appellant.
On appeal, appellant has failed to specifically identify any particular piece of evidence that was denied to him due to the trial court's denial of the motion for continuance. In sum, appellant's substantial rights did not suffer any prejudice as a result of the trial court's decision.
In his second argument under this assignment of error, appellant points to specific trial errors which allegedly constituted ineffective assistance of counsel. They are:
 "1. Trial counsel questioned appellant at length about misdemeanor and traffic convictions which were not admissible for impeachment, discrediting her own witness unnecessarily.
 "2. Trial counsel failed to use a peremptory challenge to Juror DeMattio, an obviously biased juror, and did not even question him further about his affinity with law enforcement. * * *
 "3. Trial counsel failed to object to the prosecutors' improper remarks in Closing Argument. These inflammatory statements were numerous and flagrantly prejudicial. * * *
 "4. Trial counsel did not request a medical examination of the alleged victims.
 "5. Trial counsel did not request appointment of an expert witness regarding the sexual predator determination.
 "6. Trial counsel failed to object to hearsay upon hearsay re John, Jr.'s supposed statements to Tasha and concerning statements by Thomas Wells as related by the case worker.
 "7. Trial counsel failed to subpoena Thomas Wells' psychiatric and medical records and determine what medication he was taking and the possible side effects of sudden withdrawal.
 "8. Trial counsel failed to object to the prosecutor's questioning Appellant re his relationship with a hitch-hiker."
In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance. Strickland v. Washington
(1984), 466 U.S. 668, 687; State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. A defendant must show that counsel acted unreasonably and that but for counsel's errors, there exists a reasonable probability that the result of the proceeding would have been different. Strickland,466 U.S. at 696; Bradley, 42 Ohio St.3d at paragraph three of the syllabus.
"Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel." Statev. Carter (1995), 72 Ohio St.3d 545, 558. Rather, trial counsel is entitled to a strong presumption that all decisions fell within the wide range of reasonable, professional assistance.State v. Sallie (1998), 81 Ohio St.3d 673, 675.
Turning to the case at hand, we will address each of the alleged errors in the order presented, to the extent they are argued. Concerning the questioning of appellant about his criminal history, said questioning falls within the realm of trial strategy. It presented appellant with the opportunity to demonstrate his ability to be truthful and forthright as well as to explain the circumstances surrounding each situation.
As to appellant's claim of a biased juror, the record reveals that Mr. DeMattio acknowledged a personal relationship with the chief of police for Steubenville, Ohio. However, Mr. DeMattio also indicated that he would be fair and unbiased and would base his determination only upon the evidence presented.
Regarding appellant's claims of prosecutorial misconduct, appellant quotes several remarks made by the prosecutor during closing argument. The test for prosecutorial misconduct is whether the prosecutor's remarks are improper and, if so, whether those comments prejudicially affected the substantial rights of the accused. State v. Lott (1990), 51 Ohio St.3d 160, 165. The Supreme Court has held that the touchstone of a due process analysis in a case of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. SeeSmith v. Phillips (1982), 455 U.S. 209, 219.
Appellant has failed to substantiate by reference to case law or otherwise, how any of the remarks were either improper or prejudicial. All of the remarks were made based on characterizations of appellant made by witnesses at trial or other evidence presented at trial.
As to the remaining instances of alleged ineffective assistance, appellant has failed to explain, demonstrate, or otherwise articulate how any of those decisions fell below an objective standard of reasonable performance or how those decisions prejudiced his case. App.R. 16(A)(7) requires that an appellant include in his brief an argument containing his contentions with respect to each assignment of error presented for review and the reasons in support of the contentions, withcitations to the authorities, statutes, and parts of the recordon which appellant relies. In the absence of any cogent or articulable analysis, conclusory assertions will not suffice.
Accordingly, appellant's first assignment of error is without merit.
Appellant's second assignment of error states:
 "APPELLANT WAS DENIED A FAIR TRIAL AND DUE PROCESS UNDER BOTH THE UNITED STATES AND OHIO CONSTITUTIONS BY THE LACK OF CERTAINITY IN THE INDICTMENT, JURY INSTRUCTIONS AND VERDICT FORMS."
Appellant argues that the indictment was vague as to the dates of the alleged offenses and failed to name any of the alleged victims within the counts. In addition, appellant notes that neither the jury instructions nor the verdict forms contained the names of the alleged victims so as to make clear which offense corresponded to each count. As a result, appellant claims that because appellee argued that each alleged victim had been raped multiple times, it was possible that the jury could have found appellant guilty of raping one victim three times, or that a single incident with a single victim resulted in convictions under two counts in the indictment. As a result, appellant claims the jury verdict fails to indicate what appellant was convicted for.
In response, appellee claims that the indictment in question meets the statutory requirements for criminal indictments and that there is no requirement that an indictment contain the name or names of the alleged victims. In addition, appellee notes that appellant failed to challenge the sufficiency of the indictment or the verdict forms and should therefore be deemed to have waived any alleged error.
R.C. 2941.05 provides:
 "In an indictment or information charging an offense, each count shall contain, and is sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations not essential to be proved. It may be in the words of the section of the Revised Code describing the offense or declaring the matter charged to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is charged."
Pursuant to R.C. 2941.05, an indictment generally is sufficient if it contains, in substance, a statement that the accused has committed some public offense therein specified. State v.Sellards (1985), 17 Ohio St.3d 169, 170-171. Ordinarily, precise times and dates are not essential elements of offenses. Id. at 171. R.C. 2941.03(E) provides in part that:
 "An indictment or information is sufficient if it can be understood therefrom:
"* * *
 "(E) That the offense was committed at some time prior to the time of finding of the indictment or filing of the information."
In addition, the failure to include the name of the alleged victim in an indictment is not a basis for dismissing it where the name of the victim is not an essential element of the offense charged. State v. Phillips (1991), 75 Ohio App.3d 785, 792.
In the instant case, the five counts all contained a statement that appellant committed a public offense sufficient to give appellant notice of the offense of which he was charged. The failure to state specific dates and the names of the alleged victims does not render the indictment invalid. In any event, appellee provided appellant with a bill of particulars which specifically stated which acts were allegedly performed with each victim.
As to appellant's complaints about the verdict forms, he did not object to them at trial thereby waiving all but plain error.State v. Williams (1996), 74 Ohio St.3d 569, 581. To prove plain error, the defense must establish that, but for the asserted deficiency, the outcome of the trial clearly would have been otherwise. Id. at 581, fn. 1. Based on the evidence presented in this trial, we cannot say that, but for the alleged deficiency in the verdict forms, the outcome of the trial clearly would have been otherwise. Therefore, we find no plain error.
Appellant's second assignment of error is without merit.
Appellant's third assignment of error states:
 "APPELLANT WAS DENIED A FAIR TRIAL AND DUE PROCESS UNDER BOTH THE UNITED STATES AND OHIO CONSTITUTIONS BY THE FAILURE OF THE STATE TO PROVIDE A MORE DEFINITE BILL OF PARTICULARS RELATING TO THE EVIDENCE PRODUCED AT TRIAL."
Appellant claims that he was denied access to potential alibi witnesses by the failure of appellee to provide more specific information regarding the dates of the alleged rapes. In addition, appellant notes that the bill of particulars provided did not even mention the acts admitted to at trial by appellant's brother, Thomas Wells.
In response, appellee claims that the information provided to appellant was the most specific information available, and that at trial the victims were unable to give any more specific times or dates. In addition, appellee notes that March or April of 1997 was as specific as Thomas Wells was able to testify with regards to the alleged rape of Tara Wells. Finally, appellee claims that appellant did not suffer prejudice as he did not allege a specific alibi defense, nor did he file a notice of alibi.
A bill of particulars has a limited purpose — to elucidate or particularize the conduct of the accused alleged to constitute the charged offense. Sellards, 17 Ohio St.3d at 171. A bill of particulars is not designed to provide the accused with specifications of evidence or to serve as a substitute for discovery. Id.
Ordinarily, specifications as to date and time would not be required in a bill of particulars since such information does not describe particular conduct, but only when that conduct is alleged to have occurred, knowledge of which is generally irrelevant to the preparation of a defense. State v. Gingell
(1982), 7 Ohio App.3d 364, 367. While temporal information is generally irrelevant in preparing a defense, the state must, in response to a bill of particulars or demand for discovery, supply specific dates and times with regard to an alleged offense where it possess such information. Sellards, 17 Ohio St.3d at 171. However, if the absence of specifics truly prejudices the accused's ability to fairly defend himself, then such inexactitude may prove fatal to prosecution. Id. at 172.
In the instant case, appellee provided appellant with as specific information as it was able to obtain. The trial testimony concerning times and dates failed to provide any more specificity than that provided in the bill of particulars and in the indictment. The bill of particulars clearly specified for appellant the particular conduct alleged to have constituted the charged offenses.
Appellant has failed to demonstrate that the failure to specify dates and times was materially detrimental to his defense. Although appellant claims he moved out of the family home in August of 1997, he conceded at trial that he continued to visit the children. In addition, while appellant claims on appeal that the inexactitude of the bill of particulars denied him the ability to present an alibi defense, appellant never filed a notice of intent to claim alibi as required by Crim.R. 12.1.
Appellant's third assignment of error is without merit.
Appellant's fourth assignment of error states:
 "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR APPOINTMENT OF EXPERT."
Appellant claims the trial court erred in failing to appoint an expert to assist the jury in understanding the dangers of improper questioning techniques used by investigators of child sex abuse allegations, and to explain the methods available to evaluate whether children have been manipulated into false statements regarding sexual abuse. Appellant notes that the crux of his defense was that Drema Wells had forced the children to lie and that she had a history of alleging sexual abuse whenever appellant left her. Appellant apparently claims that the failure to appoint an expert deprived him of the ability to demonstrate that the accusations against him were false.
In addition, appellant points out that appellee's witness, Mary Recinella, was permitted to explain how Belmont County Children Services Agency evaluates claims, and was permitted to discuss particular signs of veracity. Appellant claims this essentially allowed Recinella to give an opinion as to the credibility of the alleged child victims, even though the trial court had overruled appellant's motion for appointment of an expert on that very basis. Appellant argues that because his request was a reasonable one, the trial court erred in denying it.
In response, appellee claims that Recinella did not testify concerning the credibility of the children, but rather explained the investigation that she conducted. Appellee notes that the credibility of the childrens' accusations was for the jury to decide, and that cross-examination of the children by counsel for appellant was the preferred means of testing their credibility.
An indigent defendant who seeks state-funded expert assistance bears the burden of establishing a reasonable necessity for such assistance. State v. Gumm (1995), 73 Ohio St.3d 413, 427. At a minimum, the indigent defendant must present the trial judge with sufficient facts with which the court can base a decision. Statev. Scott (1987), 41 Ohio App.3d 313, 315. Undeveloped assertions that the proposed assistance would be useful to the defense are patently inadequate. Id. In addition, the decision to appoint an expert is left to the broad discretion of the trial court. Statev. Blankenship (1995), 102 Ohio App.3d 534, 551.
In his motion, appellant asserted that an expert psychologist was needed "to shed light on the credibility of the witnesses and the appropriateness of the manner in which the local law enforcement agencies and social service agencies interviewed the children." With respect to the first of these proposed subjects of testimony, we note that an expert may not give an opinion on the veracity of statements made by a child declarant. State v.Stowers (1998), 81 Ohio St.3d 260, 262. See also State v. Boston
(1989), 46 Ohio St.3d 108, syllabus, modified on other grounds byState v. Dever (1992), 64 Ohio St.3d 401 ("An expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant."). In addition, appellant failed to maintain his burden of establishing the reasonable necessity of his request. As the trial court noted:
 "The manner in which the Motion is drafted and the arguments made to the Court leads the Court to the conclusion that the expert is being sought for the sole purpose of stating in the expert's ultimate opinion as to whether or not the alleged victims are truthful or not. This would in effect result in an expert testifying as to the credibility of the witnesses which is an ultimate decision for the jury."
Appellant had other means at his disposal to inquire into any alleged improper questioning techniques, and our review of the record indicates that counsel for appellant effectively cross-examined Recinella on precisely this issue. Accordingly, the trial court did not abuse its discretion by denying appellant's request for the appointment of an expert.
Appellant's fourth assignment of error is without merit.
Appellant's fifth assignment of error states:
 "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR SEVERENCE."
Appellant argues that he was prejudiced by the failure of the trial court to sever the various counts for separate trial. Specifically, appellant notes that the offenses involved different victims at different times and argues that the testimony of the victims was very different. In addition, appellant argues that had there been separate trials, Thomas Wells could not have testified in the counts relating to Tasha and Tiffanie Wells, as his testimony was limited to the incident involving Tara Wells. In response appellee argues that the counts in the indictment were properly joined and that even if the counts were severed for purposes of trial the testimony of Thomas Wells would likely have been admissible under Evid.R. 404(B)
Crim.R. 8(A) provides that:
 "Two or more offenses may be charged in the same indictment * * * in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."
Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses. State v. Schaim
(1992), 65 Ohio St.3d 51, 58. Indeed, in some circumstances, a defendant may prefer the disadvantages of joinder to the harassment, delay, trauma, and expense of multiple prosecutions.Id. However, once similar offenses are properly joined a defendant may move to sever the charges pursuant to Crim.R. 14, which provides in part:
 "If it appears that a defendant or the state is prejudiced by a joinder of offenses * * * in an indictment * * * or by such joinder for trial together of indictments * * * the court shall order an election or separate trial of counts * * * or provide such other relief as justice requires.
To prevail on a claim that the trial court erred in denying a motion to sever, a defendant has the burden of affirmatively demonstrating (1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial. Schaim, 65 Ohio St.3d at 59. In addition, when a defendant claims he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct.Id.
Appellant's motion states that the alleged acts were not part of the same act or transaction and were not part of a common scheme or plan. In addition, the motion claims that a jury would be unable to separate the alleged acts and the jury would be inclined to convict appellant on all counts should it find him guilty on a single count. These arguments were essentially reiterated at the hearing on the motion.
Appellant's claim that the alleged acts were separate transactions relates to whether the counts were properly joined. However, inasmuch as the five counts allege conduct that is of a "similar character", we find the counts were properly joined under Crim.R. 8.
With respect to appellant's motion to sever, we find no error on the part of the trial court for two reasons. First, at the time of the motion, appellant failed to provide the trial court with any specific information that would enable the trial court to undertake the weighing test outlined in Schaim, supra. Specifically, appellant failed to appraise the trial court of the particular evidence it anticipated would be used with respect to the different offenses charged. As such, the trial court did not have sufficient information before it to weigh the considerations favoring joinder against appellant's right to a fair trial.
Secondly, appellant failed to renew his motion to sever either at the close of appellee's case or at the conclusion of all of the evidence. The weight of authority indicates that if a motion to sever is not renewed, it is waived. State v. Strobel (1988),51 Ohio App.3d 31, 33. This is especially the case where, as in the instant case, the trial court stated that it reserved the right to reconsider the motion if it appeared from the evidence that the jury was incapable of weighing each count independently. Accordingly, appellant has failed to demonstrate any error on the part of the trial court in denying his motion to sever.
Appellant's fifth assignment of error is without merit.
Appellant's sixth assignment of error states:
 "THE TRIAL COURT ERRED IN FAILING TO ORDER THE PRODUCTION OF ALL MEDICAL RECORDS OF THE ALLEGED VICTIMS."
According to appellant, the record demonstrated at least one physical examination which tended to negate the allegations of abuse. Specifically, Recinella testified on cross-examination that a physical examination of the alleged victims had been performed in Belmont County, made in response to sexual abuse allegations, which examination had determined that marks around the vaginal area had in fact been flea bites. Appellant claims he was stymied in his attempts to obtain these records and that appellee, who had access to them, was required to disclose them under Crim.R. 16(B)(1)(f)
In response, appellee claims that it disclosed all the information it knew or had reason to know of at the time, and that appellee is currently unaware of any medical examination performed as part of the investigation of the allegations contained in the instant indictment. Appellee notes that the Belmont County examination was not related to the present allegations against appellant, and that prior to appellant's cross-examination of Recinella appellee had no knowledge of said examination. As such, appellee claims it had no duty to disclose the information pursuant to Crim.R. 16.
Appellant's motion to release records sought an order from the trial court requiring the Belmont County Children Services Agency (BCCSA) to release all records, medical examinations and tests performed on the children. At the hearing, counsel for appellant claimed that the aforementioned agency had informed counsel that they would not honor a subpoena from Jefferson County and would not release the records to appellant personally. In addition, counsel for appellant noted that the agency had also indicated that it would not respond to a subpoena duces tecum. The trial court responded as follows:
 "THE COURT Well, guess what. My understanding of the issuance of a subpoena is if somebody doesn't appear in response to a duly issued subpoena to appear with whatever records are subpoenaed, they stand the risk of being held in contempt of court. Their remedy is to seek a protective order. You want to issue a subpoena, issue a subpoena."
Appellant subsequently supplemented his witness list to include personnel from BCCSA and caused two subpoena duces tecum
to issue, one upon the director of the BCCSA and one upon the caseworker who conducted the investigation into the allegations made against appellant. The record does not reveal whether either of these subpoenas were honored. Given the trial court's statement that it intended to see any such subpoena honored, we are unable to discern any error from the record on the part of the trial court.
Appellant's sixth assignment of error is without merit.
Appellant's seventh assignment of error states:
 "WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS UNDER O.R.C. 2907.02(A)(1)(b) AS TO ALL COUNTS."
Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. State v. Smith (1997), 80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.Smith, 80 Ohio St.3d at 113.
Appellant was indicted on five counts of rape, two with force specifications, in violation of R.C. 2907.02(A)(1)(b) That section states:
 "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
"* * *
 "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
R.C. 2907.01(A) states:
 "(A) `Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
At trial, Tasha Wells testified that appellant had performed sexual intercourse with her on numerous occasions since she was three or four years old. Tiffanie Wells testified that appellant had performed oral sex on her and forced her to perform oral sex on him on numerous occasions since she was about three years old. Thomas Wells testified that appellant had performed oral sex on Tara Wells and forced her to perform oral sex on him. Therefore, there was sufficient evidence to establish that appellant had raped his daughters repeatedly.
R.C. 2901.01(A) defines the element of force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." In State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph one of the syllabus, the Ohio Supreme Court held:
 "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength."
As in this case, Eskridge involved a father-child relationship where the "youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose." (Internal citation and quotation omitted.)Id., 38 Ohio St.3d at 59. The defendant father held a position of authority over the victim's daughter which did not require any explicit threats or displays of force. Id.
"[B]ecause of [a] child's dependence on his or her parents, a child of tender years has no real power to resist his or her parent's command, and every command contains an implicit threat of punishment for failure to obey." State v. Schaim (1992),65 Ohio St.3d 51, 55. Therefore, "[a] person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to R.C. 2907.02(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint." State v. Dye (1998), 82 Ohio St.3d 323, syllabus.
At trial, Tiffanie Wells testified that appellant had told her that he would "smack her" if she ever told anyone about the sexual abuse. Tara Well testified that appellant threatened to dig a hole, chop her head off, and bury her in the hole. These overt threats of harm, although not required, taken together with the circumstances under which the rapes occurred provided sufficient evidence that appellant committed the rapes with force or the threat of force.
In sum, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Appellant's seventh assignment of error is without merit.
Appellant's eighth assignment of error states:
 "WHETHER THE TRIAL COURT ERRED IN FINDING APPELLANT A `SEXUALLY VIOLENT PREDATOR' OR `SEXUAL PREDATOR.'"
In the trial court's judgment entry of sentence, it classified appellant as a "sexually violent predator." However, at the sentencing hearing, the court indicates that appellant was found to be a "sexual predator." Aside from the confusion over the wording of the classification, appellant argues that appellee presented no evidence to support a sexual predator classification beyond the trial records.
If a trial court has before it an offender who has plead guilty to or been convicted of a sexually oriented offense, it must conduct a hearing to determine if the offender is a sexual predator. R.C. 2950(B)(1). A sexual predator is "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E). The trial court must conduct the hearing prior to sentencing and, if the sexually oriented offense is a felony, may conduct the hearing as part of the sentencing hearing. Id. At the hearing, the offender and the prosecutor have the opportunity to testify, present evidence, and call and examine witnesses and expert witnesses regarding the determination of whether the offender is a sexual predator. Id.
In this case, the trial court conducted the sexual predator hearing as part of the sentencing hearing. The prosecutor referred the court to the evidence presented at trial and argued the applicability of certain statutory factors that would support a finding that appellant is a sexual predator. Since the judge at the sexual predator hearing presided over the original trial, he could properly have taken judicial notice of the prior proceedings in the same case. State v. Owens (June 19, 1998), Hamilton App. No. C-970676, unreported, 1998 WL 320915 at *2. Based on the evidence presented at trial, there was sufficient evidence upon which the trial court could have clearly and convincingly concluded that appellant is a sexual predator. Appellant has failed to otherwise explain, demonstrate, or otherwise articulate how or why the trial court erred in classifying him as a sexual predator. See App.R. 16(A)(7).
Appellant's eighth assignment of error is without merit.
Appellant's ninth assignment of error states:
 "WHETHER THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO THE MAXIMUM TERMS FOR EACH COUNT."
Appellant was convicted of five counts of rape, two with force specifications, in violation of R.C. 2907.02(A)(1)(b). For the three counts without a force specification, the trial court sentenced appellant to a ten-year term of imprisonment on each count. For the two counts that contained force specifications, the court sentenced appellant to a mandatory life term of imprisonment on each of those counts. The court also ordered that all five sentences be served consecutive to each other.
On the rape counts without a force specification, the trial court sentenced appellant to the maximum term authorized for the offense. As required by R.C. 2929.14(B), the court found on the record that the shortest term would demean the seriousness of appellant's conduct and would not adequately protect the public from future crime by appellant. Also, as required by R.C.2929.14(E)(4) for imposition of multiple terms, the court found that the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the appellant's conduct. For the two rape counts with a force specification, the trial court imposed mandatory life sentences as required by R.C. 2907.02(B).
Appellant argues that some of the factors relating to recidivism and the seriousness of his conduct are present and that some are not. Appellant fails to demonstrate how or why the presence of some factors and the absence of others do not support the trial court's sentencing decision. As to the rape counts without a force specification, the record in this case reveals that the court's stated reasons and findings support imposition of the maximum term authorized for the offense. The record does not clearly and convincingly support a conclusion to the contrary.
Appellant's ninth assignment of error is without merit.
Appellant's tenth assignment of error states:
 "WHETHER APPELLANT COULD NOT BE CONVICTED OF ALL FIVE COUNTS UNDER THE EVIDENCE PRESENTED, AS COUNTS FOUR AND FIVE SHOULD BE MERGED WITH COUNTS ONE THROUGH THREE."
Appellant argues that he could not be convicted of all five counts of rape because the testimony of Tiffanie and Tara Wells was too vague to make out more than one instance of rape each. Appellant's argument is totally unfounded. All three children testified that appellant had raped them on repeated occasions. Specifically, Tasha testified that appellant sexually abused her almost every month and Tiffanie testified that appellant sexually abused her almost every day. Tara simply indicated that it had happened on more than one occasion. Therefore, there was ample evidence to establish each of the five counts.
Appellant's tenth assignment of error is without merit.
Appellant's eleventh assignment of error states:
 "WHETHER THE CUMULATIVE EFFECT OF THE ERRORS DEPRIVED APPELLANT OF THE RIGHT TO A FAIR TRIAL, UNDER BOTH THE UNITED STATES AND OHIO CONSTITUTIONS."
Appellant argues that the cumulative effect of the errors alleged and set forth in his previous assignment of error was sufficient to deny him a fair trial.
The doctrine of cumulative error is not applicable when the appellant fails to demonstrate that there were multiple instances of error. State v. Garner (1995), 74 Ohio St.3d 49, 64. In this case, the only error demonstrated by appellant concerned the trial court's denial of his motion for continuance and we determined that error to be harmless. Therefore, the doctrine of cumulative error does not apply to appellant's case.
Appellant's eleventh assignment of error is without merit.
The judgment of the trial court is hereby affirmed.
JUDGMENT: Affirmed
Cox, J., Vukovich, J., concurs.
APPROVED:
 ____________________ GENE DONOFRIO JUDGE.